IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOYCE KERRI MAHLE, )
)
                Plaintiff, )
)
vs. )
)
KIKOLO KIJAKAZI, )
) No. 3:21-cv-0090-HRH
                Defendant. )
_____)

## O R D E R

This is an action for judicial review of the denial of disability benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381-1383f. Plaintiff Joyce Kerri Mahle has timely filed her opening brief[1] to which defendant Kikolo Kijakazi has timely responded.[2] Oral argument was not requested and is not deemed necessary.

### Procedural Background

On August 3, 2018, plaintiff filed applications for disability benefits under Title II and Title XVI, alleging that she became disabled on October 14, 2016. Plaintiff alleges that she is disabled due to low vision, back and neck pain, arthritis, and musculoskeletal problems.

---

[1]Docket No. 18.

[2]Docket No. 19.

Plaintiff's applications were denied, and she requested a hearing. After an administrative hearing on January 27, 2020, an administrative law judge (ALJ) denied plaintiff's application. On September 8, 2020, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 27, 2020 decision the final decision of the Commissioner. On April 13, 2021, plaintiff commenced this action for judicial review of the Commissioner's final decision.

## General Background

Plaintiff was born on October 11, 1975. She was 41 years old on her alleged disability onset date. Plaintiff has an associate's degree in occupational industrial instrumentation. Plaintiff's past relevant work includes work as an engineer aide, an office helper, and an administrative clerk.

## ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through December 31, 2020."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 29.

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(continued...)

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since October 14, 2016, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: obesity and psychotic disorder not otherwise specified. . . ."[6] The ALJ found plaintiff's low-vision non-severe.[7] The ALJ found plaintiff's chronic low back/neck pain to be "a non-medically determinable impairment. . . ."[8]

---

[4](...continued)
>   Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>   Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>   Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>   Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 29.

[6]Admin. Rec. at 29.

[7]Admin. Rec. at 29.

[8]Admin. Rec. at 30.

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[9] The ALJ noted that "there is no medical listing for obesity specifically," but she found "that the medical evidence does not establish claimant's obesity is at listing level severity."[10] As for plaintiff's mental impairment, the ALJ considered Listing 12.03 (schizophrenia spectrum and other psychotic disorders).[11] The ALJ considered whether the paragraph B criteria were satisfied and found that plaintiff had a mild limitation in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting or maintaining pace; and a mild limitation as to adapting or managing oneself.[12] The ALJ also found that the paragraph C criteria were not satisfied.[13]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she is

---

[9]Admin. Rec. at 30.

[10]Admin. Rec. at 30.

[11]Admin. Rec. at 30.

[12]Admin. Rec. at 30-31.

[13]Admin. Rec. at 31.

-4-

> limited to frequent climbing of ramps or stairs, no climbing of ladders, ropes or scaffolds, frequent balancing, stooping and kneeling, and only occasional crouching and crawling. She must avoid even moderate exposure to hazardous machinery. She is limited to no high pace or assembly line type work with only occasional interaction with the public and coworkers, and with no tandem tasks and supervisors.[14]

The ALJ discounted plaintiff's pain and symptom statements based on the limited treatment she had received, the medical record overall, and her reports of daily activities.[15] The ALJ also discounted plaintiff's pain and symptom statements because of drug seeking, not taking her medication as prescribed, not following through with treatment, and substance abuse.[16]

The ALJ found Dr. Anderson's opinion persuasive.[17] The ALJ found Dr. Lace's opinions persuasive.[18] The ALJ found Dr. Buskirk's opinions "moderately persuasive."[19]

---

[14] Admin. Rec. at 32.

[15] Admin. Rec. at 33.

[16] Admin. Rec. at 35-36.

[17] Admin. Rec. at 37. Dr. Anderson opined that plaintiff could occasionally lift/carry 50 pounds; could frequently lift/carry 25 pounds; could stand/walk for 6 hours; could sit for six hours; had no limits as to push/pull; could frequently climb ramps and stairs; could never climb ladders/ropes/scaffolds; could frequently balance, stoop, and kneel; could occasionally crouch and crawl; and should "avoid even moderate exposure to hazards because of the obesity." Admin. Rec. at 56-57.

[18] Admin. Rec. at 37. Dr. Lace's opinions are discussed below in detail.

[19] Admin. Rec. at 37. On September 27, 2018, Dr. James R. Buskirk opined that plaintiff had moderate limitations as to understanding, remembering, or applying informa-
(continued...)

The ALJ found Dr. Backlund's opinion to be unpersuasive.[20] And, the ALJ found the opinions of Dr. Maravelli and Dr. McGinness to be "not persuasive."[21]

---

[19](...continued)
tion; moderate limitations as to interacting with others; moderate limitations as to concentration, persistence, or maintaining pace; and moderate limitations as to adapting or managing oneself. Admin. Rec. at 92. Dr. Buskirk opined that plaintiff was not significantly limited as to her ability to remember locations and work-like procedures, understand/remember/carry out short and simple instructions, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, be aware of normal hazards and take appropriate precautions, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others; and was moderately limited in her ability to understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Admin. Rec. at 94-96. Dr. Buskirk also opined that plaintiff was "capable of simple tasks," could "persist at simple tasks in at least 2 hours intervals throughout a normal workday/week," was "capable of cursory public and coworker contact," and "would do best with a set routine." Admin. Rec. at 94-96. Dr. Buskirk noted that plaintiff had "shown psychotic features which would, if exacerbated, cause deterioration of her functioning." Admin. Rec. at 96.

[20]Admin. Rec. at 37. On September 28, 2018, William M. Backlund, M.D., opined that plaintiff's "physical condition is non severe." Admin. Rec. at 91.

[21]Admin. Rec. at 38. On January 29, 2019, Dr. Maravelli opined that the "[e]vidence in the file lacks sufficient longitudinal history and exam evidence and insufficient objective testing to allow for assessment of the allegations in this case." Admin. Rec. at 108. On January 25, 2019, Dr. McGinness opined that "[t]here is insufficient evidence to substantiate the presence" of an anxiety and obsessive-compulsive disorder. Admin. Rec. at 109.

The ALJ mentioned the third-party function reports submitted by Brittany Sallaffie, plaintiff's friend,[22] but "did not provide articulation about this evidence, which is inherently neither valuable nor persuasive."[23]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as an administrative clerk, engineering aide and case aide."[24]

The ALJ also made alternative step five findings. The ALJ found that plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy[,]" including working as a janitor, cleaner, or laundry worker.[25]

Thus, the ALJ concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from October 14, 2016, through the date of this decision. . . ."[26]

## Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal

---

[22]Admin. Rec. at 234-242, 266-274.

[23]Admin. Rec. at 38.

[24]Admin. Rec. at 38.

[25]Admin. Rec. at 39-40.

[26]Admin. Rec. at 40.

standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ failed to fully develop the record. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). "This duty extends to the represented as well as to the unrepresented claimant." Id. "When," as here, "the claimant is unrepresented, however, the ALJ must be especially diligent in exploring for all the relevant facts." Id. "The ALJ's duty to develop the record fully is also

heightened where the claimant may be mentally ill and thus unable to protect her own interests." Id.

Plaintiff's argument that the ALJ failed to fully develop the record is based on the testimony of Dr. Lace, the psychological medical expert. Dr. Lace testified that plaintiff had significant symptoms in late 2016 but that as of September 2018, "the record indicate[s] no depression, some anxiety, [and] no psychotic symptoms."[27] Dr. Lace testified that "[t]here's not a lot in terms of ongoing intensive treatment notes."[28] Dr. Lace also testified that plaintiff was prescribed medications, that these medications helped with plaintiff's symptoms, and "[f]rom what [he] could tell," plaintiff took the medications as prescribed.[29] Dr. Lace also testified that in late 2016, plaintiff had "a GAF score of 40 which is in the more severe range, although that was an admission to the hospital."[30]

Plaintiff argues that "[t]he ALJ failed to inquire into these facts and evidence contradicting this testimony, thereby failing to properly develop the record and facts in this case."[31] For example, Dr. Lace testified that the GAF score of 40 was in the context of an admission to the hospital, but plaintiff points out that her GAF was assessed as being 40 at

---

[27]Admin. Rec. at 60.

[28]Admin. Rec. at 60.

[29]Admin. Rec. at 60.

[30]Admin. Rec. at 59.

[31]Plaintiff's Memorandum of Law in Support of a Social Security Appeal at 14, Docket No. 18.

the time of discharge, after she had been stabilized for discharge home. Plaintiff contends that Dr. Lace did not discuss the significance of the fact that her GAF score was 40 at the time of discharge, which indicates an improvement from the time of her admission, when it was noted that she was catatonic.[32] Plaintiff argues that it is significant that she was released with a GAF in the severe range, as that indicates that she had continuing, severe functional limitations, which she argues is documented in the clinical findings at discharge and in subsequent records.

Plaintiff also argues that Dr. Lace's testimony that she was compliant with medications and that medication was effective in treating her mental health impairment was contrary to the record and that the ALJ should have been aware of this and followed up on it. Plaintiff contends that the record shows that she repeatedly stopped or refused medications and requested to be taken off medication.[33] The record also shows that at times plaintiff ran out of her medications,[34] which may be an indication that she was not taking her medication as prescribed. Plaintiff also contends that she was found to be paranoid or

---

[32]Admin. Rec. at 356.

[33]Admin. Rec. at 368 (ANP Cliff noted that plaintiff "denies any psychiatric symptoms except for possible anxiety but is not willing to take medications. She continues to state 'I'm fine'"); 445 (PAC Murray noted that plaintiff "just wants to get 'weaned off' her meds and get some valium for her anxiety"); 452 (at ER visit, it is noted that plaintiff "does not feel that she needs to be on [the] medication she was discharged with, shows me multiple bottles of medications including clonazepam, Risperdal, and sertraline. She states that she stopped taking all of these medications yesterday.").

[34]Admin. Rec. at 425, 428.

-10-

lacking insight and judgment, even when taking her medications.[35] Thus, plaintiff argues that Dr. Lace's testimony contradicted the record and the ALJ should have, but failed, to inquire further about whether plaintiff was actually compliant with her medication and whether her medication was effective.

Plaintiff also contends that Dr. Lace's testimony suggests that she had no significant symptoms and received little to no mental health treatment after late 2016. Plaintiff argues that this testimony triggered the ALJ's duty to further inquire as to whether her lack of treatment and refusal to engage with behavioral health providers were symptoms of her psychosis. Plaintiff contends that Dr. Lace ignored evidence of her agitated and irritable response to behavioral health questions.[36] But plaintiff argues that the ALJ should have been aware of this evidence and questioned Dr. Lace about it, which the ALJ did not do. Plaintiff also suggests that Dr. Lace's testimony that she had no significant symptoms after late 2016 was not accurate. Plaintiff points out that in 2017, 2018, and 2020, there were times when

---

[35]Admin. 364 (noting that plaintiff presented "some what paranoid"); 391 (poor judgment noted); 398 (impulsive judgment noted).

[36]Admin. Rec. at 362 (ANP Cliff noted that plaintiff "is currently showing minimal participation in the process of evaluation and treatment of her reported anxiety"); 391 (noting that plaintiff was "[f]rustrated by PCP questioning, irritable towards BHC[,]" and "declines to describe symptoms/triggers. Unwilling to cooperate with BHC questions"); 393 (PAC Murray noted that plaintiff "has missed several appts with BURT provider and at least twice has met with BHC at my request, but refuses to talk with them"); 415 (upon arrival at ER, plaintiff "states that she feels like she is dehydrated and feels generally unwell[;] when asked further questions [s]he states [s]he does not wish to answer them"); 607 (noting that plaintiff not interested in a focused assessment of her mental health issues).

-11-

she had flat affect,[37] distractibility,[38] preoccupation,[39] decreased eye contact,[40] and disorganization.[41]

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001). Although it might have been somewhat inaccurate, Dr. Lace's testimony was not ambiguous. Rather, the problem here was that the record was inadequate. Dr. Lace's testimony, along with other evidence in the record, suggested that plaintiff's mental impairment might be the reason she was not seeking treatment and did not follow the treatment that was prescribed. Yet, the ALJ did nothing to try to connect these dots. She did not ask Dr. Lace any questions about whether some of plaintiff's actions or inactions were manifestations of plaintiff's psychotic disorder nor did the ALJ appear to even consider whether a consultative exam might have been called for in order to explore whether plaintiff's resistance to mental health treatment was a result of her mental health impairment. The ALJ in this case was faced with a claimant who may have been mentally ill and who was unrepresented. Thus, the ALJ had a duty to

---

[37]Admin. Rec. at 362, 377, 609.

[38]Admin. Rec. at 377, 608.

[39]Admin. Rec. at 362, 377, 609.

[40]Admin. Rec. at 609.

[41]Admin. Rec. at 377, 609.

-12-

be "especially diligent in exploring for all the relevant facts." Tonapetyan, 242 F.3d at 1150. But, the ALJ failed to carry out this duty.

The ALJ's failure to fully develop the record as to plaintiff's mental health impairment calls in to question the ALJ's treatment of Dr. Lace's opinions. Dr. Lace opined that plaintiff had mild limitations as to understanding, remembering, or applying information; moderate limitations as to interacting with others; moderate limitations as to concentration, persistence, or maintaining pace; and mild limitations as to adapting or managing oneself.[42] Dr. Lace opined that plaintiff was able to "work full time," but would "be limited to occasional contact with coworkers, the general public, and supervisors. And would be limited to work where there is no fast-paced production line type tasks, and perhaps limited to daily quotas."[43]

The ALJ found Dr. Lace's opinions persuasive because he was "the only psychological consultant to have the opportunity to review the entire, longitudinal medical record, and he has specialized knowledge of Social Security disability program regulations and the mental impairment listings."[44] The ALJ also found that "Dr. Lace based his opinion on objective, clinical findings in the medical record, with citations to the record, and supported

---

[42] Admin. Rec. at 61.

[43] Admin. Rec. at 61.

[44] Admin. Rec. at 37.

it with reasonable explanations."[45] And, the ALJ found that Dr. Lace's opinions were "consistent with the overall record[.]"[46] But, Dr. Lace, and in turn the ALJ, failed to consider whether plaintiff's symptoms were a manifestation of her psychotic disorder, even though there was evidence in the record to suggest as much.

The ALJ's failure to fully develop the record as to plaintiff's mental impairment also impacted the ALJ's findings as to credibility of plaintiff's subjective complaints. The ALJ provided a number of reasons for discounting plaintiff's symptom statements, including that she had received limited treatment, the medical record overall, that she did not take her medication as prescribed, her drug seeking,[47] and that she did not follow through with treatment.[48] But, if these actions or inactions were viewed through the lens of plaintiff's psychotic disorder, then it is quite possible that these were not clear and convincing reasons[49]

---

[45] Admin. Rec. at 37.

[46] Admin. Rec. at 37.

[47] There was evidence in the record that plaintiff requested valium for her anxiety and that plaintiff seemed fixated on valium to help her with her symptoms. Admin. Rec. at 379.

[48] Admin. Rec. at 35-36.

[49] "An ALJ engages in a two-step analysis" in evaluating "a claimant's testimony regarding subjective pain or symptoms. . . ." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing
(continued...)

to discount plaintiff's subjective statements. The court cannot make that determination, however, because the ALJ failed to fully develop the record in this case.

The other reasons the ALJ gave for discounting plaintiff's symptom statements cannot save the ALJ's credibility findings. The ALJ discounted plaintiff's statements based on plaintiff's daily activities. The ALJ pointed out that plaintiff was the "sole care provider for her three children[,]" that "[s]he manages her personal care/hygiene and medications without problem," that "she is able to get out of the house regularly, maintain a driver's license without restrictions . . . , get around by walking, shop in stores, and attend medical and counseling appointments. . . ."[50] The ALJ also pointed out that plaintiff "spends time in social activities with family including playing with her children, attending her children's school/sports activities . . . , and going to church services. . . ."[51] The ALJ concluded that plaintiff's "reported activities strongly indicate that her impairments would not preclude her from performing a limited range of medium exertional unskilled work with limited social interaction."[52]

---

[49](...continued)
so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm't of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

[50]Admin. Rec. at 36.

[51]Admin. Rec. at 36.

[52]Admin. Rec. at 36.

-15-

Case 3:21-cv-00090-HRH   Document 21   Filed 11/05/21   Page 15 of 17

But, as the Ninth Circuit has "recognized[,] disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Moreover, the ALJ failed to explain exactly how these activities undermined plaintiff's symptom statements.

The ALJ also discounted plaintiff's symptom statements because there was evidence in the record of substance abuse. The ALJ pointed out that "in [plaintiff's] most recent medical visit (January 2020), the claimant's laboratory test results show multiple illicit substances in her system including amphetamine, barbiturates, benzodiazepine, buprenorphine, cocaine, ecstasy, marijuana, methadone, methamphetamine, morphine, oxycodone, PCP and TCA. . . ."[53]

However, as plaintiff points out, this was inaccurate. The "positive" or "present" test results that the ALJ referred to were from a "control" sample used from comparison purposes and plaintiff's actual blood tests show a "negative" result for all of the foregoing substances.[54] Thus, contrary to the ALJ's assertion that plaintiff was abusing an overwhelming number of illicit substances, plaintiff's lab work actually showed that there was no presence of illicit substances.

Because the ALJ erred by failing to fully develop the record, a failure that impacted the ALJ's treatment of Dr. Lace's opinions and plaintiff's subjective symptom statements,

---

[53]Admin. Rec. at 36.

[54]Admin. Rec. at 724-726.

-16-

the court must consider whether to remand this matter for further proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." Id.

Here, a remand for further proceedings is appropriate so that the ALJ can fully develop the record as it pertains to plaintiff's mental health impairment.

## Conclusion

The Commissioner's decision is reversed and this matter is remanded for further proceedings.

DATED at Anchorage, Alaska, this 4th day of November, 2021.

/s/ H. Russel Holland
United States District Judge